UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASSINDRA VISE,

    Plaintiff,

v.

    File No. 1:10-CV-582

    HON. ROBERT HOLMES BELL

GRAPHIC PACKAGING,

    Defendant.
                                                    /

## **O P I N I O N**

Plaintiff Cassindra Vise filed this action against her former employer, Defendant Graphic Packaging, alleging that she was unlawfully terminated from her employment in retaliation for filing a workers disability compensation claim. This matter is currently before the Court on Defendant's motion for summary judgment. (Dkt. No. 29.) For the reasons that follow, Defendant's motion will be granted.

**I.**

Defendant Graphic Packaging (the "Company") is a Delaware corporation with its principal place of business in Georgia. Plaintiff Cassindra Vise was employed by the Company at its paperboard production facility in Battle Creek from September 2007 to February 3, 2010. Plaintiff was a member the GCC/IBT Local 705-S ("Union"), which represents hourly employees at the Company's Battle Creek facility. (Dkt. No. 30, Def. Ex. A, Agreement ¶¶ 1.2, 1.3.)

On July 31, 2009, Plaintiff was observed limping at work and was referred to the company doctor for a fitness for duty examination. Plaintiff advised that three weeks earlier she had injured her right foot at home when she dropped a glass bowl on it. (Dkt. No. 31, Def. Ex. F, Med Service Treatment Record.) The doctor determined that Plaintiff was ineligible to work due to the threat of further injury. (*Id.*)

Plaintiff applied for short-term disability benefits under the Company's MetLife policy. The policy provides short term disability benefits for "non-work related illness or injury." (Def. Ex. G, MetLife Policy 14.) Plaintiff's application indicated that she was disabled as of July 31, 2009, due to a non-work related injury.

Plaintiff's family physician referred Plaintiff to a neurologist. Plaintiff had an electromyography ("EMG") test on August 11, 2009. In late August or early September, Plaintiff learned that she had nerve damage in her right kneecap, and she came to believe in her own mind that her knee injury might be work-related. (Ex. O, Vise Dep. 63-64.)

Plaintiff received short term disability benefits from August 3, 2009, to October 18, 2009. (Def. Ex. H, MetLife EOB). In the fall of 2009, when Plaintiff's doctor and the Company doctor disagreed as to whether or not Plaintiff could return to work, the Company and the Union resolved the conflict by agreeing to accept the determination of a neurologist. (Def. Ex. L, Arb. Tr., Cowles Test. 51-52, 62-63; Arb. Tr., Maurer Test. 90). Plaintiff returned to work on October 19, 2009, without any work restrictions.

On November 20, 2009, Plaintiff signed an application for workers compensation

benefits in which she alleged that she had sustained a work-related injury to her right knee due to repetitive use of a forklift, and that her disability was from July 31, 2009 to the present. (Def. Ex. N, Arb. Op. and Award 22.) Plaintiff continued working, and did not notify the Company of her application.

The Company's standards of conduct and progressive discipline system are outlined in a brochure entitled "Rules to Work With." (Def. Ex. B.) These Work Rules provide that a Class-A violation will result in immediate suspension with possible termination for the first offense, and a Class-C violation will generally result in a written warning for the first offense, a written warning for the second offense, and a suspension with possibility of termination for the third or continuing offense. (Ex. D, Work Rules 4.) Three or more rule violations resulting in a Written Warning within a 12-month period is a Class-A violation. As of January 29, 2010, Plaintiff had accumulated four written warnings in the previous twelve-month period:[1] (1) March 28, 2009, C-10 violation, no call/no show; (2) March 28, 2009, C-15 violation, three unexcused absences in a 60-day period; (3) June 10, 2009, C-10 violation, failure to give notice of absence one-hour before start of shift; and (4) January 15, 2010, C-10 violation, returning to work after four-day absence without proper documentation. (Def. Ex. D) Because Plaintiff had accumulated multiple written warnings

---

[1] There are additional written warnings and disciplinary suspensions in Plaintiff's file, including a violation of the Company's Drug and Alcohol Policy that resulted in a Last Chance Agreement. (Def. Exs. D, E.) However, violations that predated the one year look-back period were not cited by the Company as a basis for Plaintiff's termination. (Def. Ex. K.)

3

during this time period, she had received a three-day suspension on March 28, 2009, a one-week suspension on June 10, 2009, and a one-week suspension on January 15, 2010.  (*Id.*)

On Friday, January 29, 2010, Paula Cowles, the Company's human resource manager, received notice from the State of Michigan that Plaintiff had filed an application for workers' compensation benefits.  The application alleged that Plaintiff had sustained nerve damage to her left knee as a result of repetitive use of the forklift at work.  (Cowles Test. 35-36.) The alleged a period of disability from July 31, 2009, to the present.  (*Id.* at 35.)  This was the first time the Company had any knowledge that Plaintiff was claiming a work-related injury or injury to her knee.  (*Id.* at 35-36.)  On January 29, 2010, Ms. Cowles suspended Plaintiff and called the Union to schedule a suspension pending termination meeting for the following Monday, February 1, 2010. (Cowles Dep. 110-11.)  On February 1, 2010, Plaintiff was issued the following disciplinary citations:

> 1. C-2 Violation for "Failing to follow prescribed safety procedures, practices and policies.  Failing to report an incident or injury in a timely manner."  (5th Written Warning in a 12-mo. period)
>
> 2.  A-2 Violation for "Falsifying, misrepresenting, or altering records. Deliberate misrepresentation or falsification of facts."  (6th Written Warning in a 12-mo period)
>
> 3.  A-12 Violation for "Habitual violation of Company Rules.  Three or more rule violations resulting in a Written Warning within a Twelve (12) month period."  (7th Written Warning in a 12-mo. period).

(Def. Ex. J, Conduct Reports; Ex. B, Work Rules.)  Plaintiff was discharged on February 3, 2010. (Def. Ex. K.)  Plaintiff grieved her discharge through her Union, and the matter went

to arbitration.  At arbitration the Union argued that Plaintiff was discharged without just cause.  The arbitrator disagreed.  After an evidentiary hearing, the arbitrator determined that Plaintiff had engaged in "a deliberate act of misrepresentation, falsification and possibly fraud in clear violation of Rule A-2" by filing for workers' compensation benefits for the same period that she had collected short term disability benefits.  (Arb. Op. & Award 22.)  The arbitrator also determined that Plaintiff had withheld from the Company information relating to an alleged work injury.[2] (Arb. Op. & Award 22.)  The Company has represented that the Arbitrator determined that Plaintiff was discharged for just cause based on the seven written warnings, including three suspensions.  (Dkt. No. 30, Def.'s Br. 7.)[3] Plaintiff has not challenged this representation.

Plaintiff filed suit in the Calhoun County Circuit Court alleging that she was discharged in retaliation for  filing a workers disability claim.  The Company removed the action to federal court on the basis of diversity jurisdiction.  The Company now moves for summary judgment because Plaintiff has no evidence to support her claim, and also because

---

[2] Because the Court is finding in favor of the Company on the merits of Plaintiff's claim, the Court declines to address the Company's alternative argument that Plaintiff's retaliation claim is barred because it has already been decided by the arbitrator. Nevertheless, although Plaintiff argues that the arbitration award does not preclude her from bringing a statutory claim, *see*, *e.g.*, *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 549 (6th Cir. 2008); *Arslanian v. Oakwood United Hosps., Inc.*, 240 Mich. App. 540, 542 (2000), there is no dispute that the Court may give some weight to the arbitrator's factual findings.  *See Nance*, 527 F.3d at 549, 555.

[3] Although Defendant has referenced pages 13 and 25 from the Arbitrator's Opinion and Award, they were not filed with the Court.

the claim has already been decided. Plaintiff opposes the motion based on her contention that there are material issues of fact for trial regarding the Company's motive, and because the arbitration award is not a bar to her statutory claim. (Dkt. No. 34, Pl.'s Resp.)

**II.**

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled ot judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

The Michigan Worker's Disability Compensation Act, Mich. Comp. Laws § 418.301(11), prohibits an employer from discriminating against an employee for filing a Workers Compensation claim.[4]

Workers' compensation retaliation claims are analyzed under the *McDonnell Douglas/Burdine*[5] burden-shifting framework. *Dortman v. ACO Hardware, Inc.*, 405 F. Supp.2d 812, 822 (E.D. Mich. 2005) (citing *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 470, 606 N.W.2d 398 (1999)). Pursuant to this framework, a plaintiff must first establish a prima facie case of retaliatory discharge by showing that: (1) she asserted her right to workers' compensation benefits; (2) the defendant knew she asserted her right to workers' compensation benefits; (3) the plaintiff suffered an adverse employment action; and (4) there

---

[4]The Worker Disability Compensation Act provides:

(11) A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

Mich. Comp. Laws § 418.301(11).

[5]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

7

was a causal connection between the plaintiff's assertion of her right to workers' compensation benefits and the adverse employment action. *DeFlavis v. Lord & Taylor, Inc.*, 223 Mich. App. 432, 436, 566 N.W.2d 661, 664 (1997); *Dortman*, 405 F. Supp.2d at 822 (citing *Chiles*, 238 Mich. App. at 470, 606 N.W.2d 398).

If Plaintiff succeeds in establishing a prima facie case, this "creates a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). The ultimate burden of proving unlawful retaliation remains at all times with Plaintiff. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).

The Company agrees that Plaintiff has come forward with sufficient facts to make out the first three elements of a prima facie case of retaliatory discharge. The Company contends, however, that Plaintiff has failed to establish the fourth element of her prima facie case because she has not shown a causal connection between her assertion of her right to workers compensation benefits and her termination. The Company contends that Plaintiff has shown no more than temporal proximity, and, generally, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v. General Motors Corp.*, 469 Mich. 177, 186, 665 N.W.2d 468, 473 (2003).

8

"The burden of establishing a prima facie case is not an onerous one and is easily satisfied." *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008). The Sixth Circuit has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000) (noting that evidence of temporal proximity alone may be sufficient to support an inference of a causal connection); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 n.1 (6th Cir. May 21, 1997) (citing cases that have permitted a prima facie case to be made based on the proximity of time); *contra Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."). Plaintiff contends that the temporal proximity is particularly compelling in this case because the Company suspended Plaintiff immediately upon receipt of Plaintiff's workers' compensation claim.

The Court will assume, for purposes of this motion for summary judgment, that Plaintiff has made out her prima facie case of retaliation. The burden accordingly shifts to the Company to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. *Russell*, 537 F. 3d at 604; *Dortman*, 405 F. Supp.2d at 822. The Company has met this burden by offering evidence that Plaintiff was discharged because of

9

her violation of a succession of work rules.

Because the Company has successfully rebutted Plaintiff's prima facie case, Plaintiff has an opportunity to prove that the legitimate reasons offered by the Company were not its true reasons, but were actually a pretext to hide unlawful retaliation. *Russell*, 537 F.3d at 604. Pretext may be shown by evidence that "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." *Russell*, 537 F.3d at 604 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual. *Reeves*, 530 U.S. at 143.

Plaintiff has raised a number of arguments in support of her contention that the Company's articulated reasons for her discharge were not the true reasons, but were instead pretext to hide the Company's real motive of discharging her in retaliation for filing a Workers Compensation claim. Plaintiff's primary contention is that the timing of the Company's receipt of her application for workers' compensation benefits and its immediate suspension of her employment that same day strongly suggests retaliation.

Although the Court assumed that temporal proximity alone was sufficient to show causation for purposes of her prima facie case, temporal proximity alone is not sufficient to

establish Plaintiff's burden of proving pretext or her ultimate burden of proving retaliatory discrimination. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (holding that temporal proximity, together with evidence of a retaliatory atmosphere and the employer's statement, supported an inference of retaliation and satisfied the second part of the *Manzer* pretext showing); *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006) (noting that temporal proximity cannot alone prove pretext); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (holding that temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual); *Bell v. Prefix, Inc.* 321 F. App'x 423, 431 (6th Cir. 2009) (noting that temporal proximity alone was insufficient to satisfy the plaintiff's burden at this stage of the inquiry, but was a strong indicator of pretext when accompanied by some other, independent evidence). None of the cases Plaintiff has cited suggest that temporal proximity alone is sufficient to meet her ultimate burden of proof. *See DiCarlo v. Potter*, 358 F.3d 408, 420-22 (6th Cir. 2004) (not ruling on the sufficiency of the plaintiff's evidence on the ultimate burden of proof because the district court had granted summary judgment based on the plaintiff's failure to establish a prima facie case); *Howard v. Canteen Corp.*, 192 Mich. App. 427, 434, 481 N.W.2d 718 (1991) (noting that the causation element of the plaintiff's retaliation claim was supported by more than timing).

In this case, the temporal proximity between the Company's receipt of Plaintiff's workers' compensation claim and its suspension of Plaintiff is not even strongly suggestive

of retaliation. The temporal proximity is equally supportive of the Company's assertion that it suspended Plaintiff because of her rule violations. It was the Company's receipt of Plaintiff's workers' compensation claim that first alerted the Company that Plaintiff had failed to timely report a work injury, and that Plaintiff was attempting to pursue benefits for a work-related injury after already receiving benefits for the same period of time for a non-work-related injury. Plaintiff's case is similar to *Prado v. Potlatch Corp.*, No. CV 05-256, 2006 U.S. Dist LEXIS 68847 (D. Idaho Sept. 7, 2006), where, immediately after the plaintiff filed a workers' compensation claim, he was terminated for the stated reason that he failed to timely report an on-the-job injury. The court held that the fact that the plaintiff was fired shortly after he filed the workers' compensation claim led merely to speculation that the filing of the claim was the reason for the termination. *Id.* at *19-20. The same analysis applies to Plaintiff's case. In the absence of any further evidence, the temporal proximity leads to nothing more than speculation as to the reason for Plaintiff's termination.

In an effort to provide something more, Plaintiff has raised several challenges to the Company's assertion that she failed to give timely notice of her injury. There is no dispute that an employee who has a repetitive trauma injury, as opposed to an injury attributable to a specific event, is not required under the Company Work Rules to report the injury until the employee realizes that the injury is work-related. (Cowles Dep. 87-89.) The Company has presented evidence that Plaintiff suspected that her injury was work-related in late August or early September when she received her EMR results and learned that she had damage to

12

her knee. (Vise Dep. 62-64.) Plaintiff contends that, contrary to the Company's assertions, she did not know she had a work-related injury until November 20, 2009, when she consulted with a legal expert about her rights under the Workers Compensation Disability Act. Whether Plaintiff knew she had a work-related injury when she received her EMR results, or when she met with a Workers Compensation attorney, does not present a material issue of fact. The Work Rules provide that employees "must report any accident or injury immediately," and that "[f]ailure to promptly report work related injuries" will lead to discipline. (Work Rules at 6.) Assuming Plaintiff's obligation to notify the Company of her work-related injury was not triggered until November, the Company still had a reasonable basis for finding that Plaintiff's failure to notify the Company until the end of January, two months after the obligation was triggered, violated the "prompt" notification requirement.

Plaintiff contends that she did not give untimely notice of her injury because she had ninety days under the Worker's Disability Compensation Act to give notice of a work injury.[6] Plaintiff has confused her notice obligations under the Act with her obligations under the Company's Work Rules. The purpose of the notice obligation under the Work Rules is "to promote safety, and to avoid further injury." (Dkt. No. 38, Cowles Decl.) Nothing in the Act would prohibit an employer from having or enforcing a work rule of this nature. The notice obligation under the Work Rules exists independently of the Workers Compensation

---

[6] Mich. Comp. Laws § 418.381 states in pertinent part that "The employee shall provide a notice of injury to the employer within 90 days after the happening of the injury, or within 90 days after the employee knew, or should have known, of the injury."

Disability Act's notice requirements, and is neither eliminated nor modified by the notice period under the Act.

Plaintiff also contends that the Company's assertion that it did not know about her work injury until it received her workers compenstion claim is disingenuous. Plaintiff contends that because the Company doctor advised Ms. Cowles in August that Plaintiff could not return to work without risking further injury, this placed the Company on notice of a potential work-related injury. Plaintiff's argument lacks merit. Contrary to Plaintiff's assertions, Ms. Cowles' knowledge that Plaintiff's work duties might aggravate her underlying non-work related injury is not evidence that Ms. Cowles knew or should have known that Plaintiff's underlying injury was caused by her work. Plaintiff has come forward with no evidence to demonstrate that Ms. Cowles knew or should have known before January 29, 2010, either that she had an injury to her knee, or that her knee injury was work-related.

Plaintiff contends that even if she failed to give timely notice of her work-related injury, the Company's asserted basis for her discharge is not credible because no one else who failed to give timely notice of a work injury was discharged as a result of the alleged infraction. Plaintiff has not challenged the Company's evidence that it has consistently enforced the rule regarding timely reporting. (Def. Ex. C, Disciplinary Warnings.) Plaintiff merely contends that other employees who failed to give timely notice of injuries were not discharged. Plaintiff's argument misconstrues the evidence. The Company has never stated that it discharged Plaintiff for failing to timely report her injury. The Company has

14

consistently maintained that it discharged Plaintiff for accumulating seven written warnings for a variety of rule violations, including the rule regarding notice of injuries, in a one-year period. Plaintiff has not identified any employee with a similar history of work violations who was treated differently.

Finally, Plaintiff contends that the Company's assertion that she deliberately misrepresented or falsified facts is a sham and is evidence of pretext because it is not unlawful to file for both short term disability and workers' compensation benefits.

A prima facie case of retaliation combined with a showing that the proffered non-discriminatory reason is false would be sufficient for Plaintiff to prevail on the ultimate issue of retaliation. *See Reeves*, 530 U.S. at 148; *Lindsay v. Yates*, 578 F.3d 407, 422 (6th Cir. 2009). However, Plaintiff has not shown that the Company's stated reason for her termination was false. The Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). "Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Id.* (citing *Smith*, 155 F.3d at 806). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Id.* (quoting *Smith*, 155 F.3d at 807.

15

The evidence in this case supports the Company's claim that it honestly believed that Plaintiff deliberately misrepresented or falsified facts. There is no dispute that the Worker's Disability Compensation Act provides for coordination of benefits when an individual files for both short term disability and workers' compensation benefits. *See* Mich. Comp. Laws § 418.354. However, Ms. Cowles testified at the arbitration hearing that employees who receive short term disability benefits while awaiting the resolution of their workers' compensation claim disclose that they are pursuing both types of benefits and sign an agreement acknowledging that any benefits received will be coordinated. Plaintiff sought benefits from two different sources for two different injuries for the same time period (a non-work-related foot injury and a work-related knee injury). During the six month period that elapsed after Plaintiff first filed for short term disability benefits, Plaintiff did not disclose that she had changed her mind about the cause of the injury nor did she disclose her intention to pursue a workers' compensation claim. (Arb. Tr., Cowles Test. 72.) Based on Plaintiff's conduct, the Company had a reasonable basis for issuing a violation of the Work Rule regarding falsifying or misrepresenting records. Plaintiff has not presented any evidence to suggest that Ms. Cowles' belief that Plaintiff engaged in dishonesty or fraud was not an honestly held belief. Even if Ms. Cowles erred in citing Plaintiff for fraud, the evidence does not suggest that Ms. Cowles' actions were unreasonable in light of the facts that were before her at the time the decision was made.

Plaintiff has acknowledged that the Company has consistently represented that the reason for Plaintiff's discharge was her accumulation of seven written warnings in a twelve-month period. (Def. Ex. O, Vise Dep. 111.) Plaintiff has acknowledged that no one from the Company suggested that she was being terminated for any other reason. (Vise Dep. 112.) Plaintiff has not presented any evidence that the Company has a pattern or practice of retaliating against those who reported work-related injuries or claimed workers' compensation benefits ( Vise Dep. 126.) Ms. Cowles testified that five or six people had filed workers' compensation claims in the past two years, and that the Company had never fired a person solely for the reason that they filed a workers' compensation claim. (Arb. Tr., Cowles Test. 88-89.) The only person Plaintiff knew who had filed for workers' compensation benefits was still working for the Company. (Vise Dep. 125.)

Upon review, the Court finds that Plaintiff has failed to present sufficient evidence to create an issue of fact for trial as to whether the Company's stated reason for terminating her was pretextual. Plaintiff has not shown that any of her disciplinary citations or the decision to terminate was inconsistent with Company work rules or with the Company's past practice, and Plaintiff has not come forward with any evidence to suggest that the Company engaged in a pattern or practice of terminating employees based on the filing of workers' compensation claims. Plaintiff's arguments are not sufficient, individually, or in combination, to create a material issue of fact as to pretext for trial.

17

## IV.

Because Plaintiff has failed to create an issue of fact for trial as to the Company's motive for discharging her, the Court concludes that the Company is entitled to summary judgment on Plaintiff's retaliatory discharge claim.

An order and judgment consistent with this opinion will be entered.


Dated: June 20, 2011                                     /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE